**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATHANIEL NEGRON,** | : | **CIVIL ACTION NO. 1:13-CV-1568** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TABB BICKELL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter are motions (Docs. 15, 19) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by corrections defendants Bickell, Ellers, Green, Everling, Kissel, Wertz, Lt. Dunkle, Lt. Fogle, Lt. Taylor, Butler, Walker, Hengst, Capt. Eby, Harker, Nurse Sheila, Nurse Melanie, Counselor Lovett, Psych. Sisto and Varner and defendant Lane.[1]  Defendants seek dismissal of all claims asserted by plaintiff Nathaniel Negron ("Negron"), an inmate who alleges that he was denied food and proper medical care in violation of the Eighth and Fourteenth Amendments while he was confined in the Restricted Housing Unit ("RHU") at the State Correctional Institution at Huntingdon ("SCI-

---

[1]The motions are filed on behalf of all defendants except P.A. Resigno.  On October 24, 2013, the court dismissed the complaint against Resigno for failure to serve the complaint within 120 days after filing as required by Federal Rule of Civil Procedure 4(m).  (Doc. 26).  Negron filed a motion for reconsideration.  The court conditionally granted the motion and directed the defendants to provide the court with Resigno's last known address.  (Doc. 33).  Defendants provided an address (Doc. 34), and an order (Doc. 40) recently issued conditionally vacating the order of dismissal and forwarding the complaint to the U.S. Marshal for service.

Huntingdon"), Pennsylvania.[2]  For the reasons that follow, the corrections

defendants' motion (Doc. 15) will be granted in part and denied in part and

defendant Lane's motion (Doc. 19) will be granted.

## I.   <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is

generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran &</u>

<u>Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat</u>

<u>Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the

---

[2]Negron is currently incarcerated at the State Correctional Institution at
Fayette, LaBelle, Pennsylvania.

face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  <u>See</u>

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step,

"the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

<u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as

true, while mere legal conclusions may be disregarded.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Fowler v.</u>

<u>UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual

allegations have been isolated, the court must determine whether they are

sufficient to show a "plausible claim for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing

<u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege

facts sufficient to "raise a right to relief above the speculative level").  A claim "has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Iqbal</u>, 556 U.S. at 678.

## II.   <u>Allegations of the Complaint</u>

Negron alleges that while involved in an altercation with another inmate in

the main yard at SCI-Huntingdon on September 3, 2011, he "incidentally" punched

Officer Himes.  (Doc. 1, p. 3, ¶¶ 1-2).  Other officers restrained him and, in the

process, seriously injured his ankle.  (<u>Id.</u> at  ¶ 3).  He was escorted to the RHU.  (<u>Id.</u>

at p. 4, ¶ 4).

## A.     Denial of Food Tray

Negron alleges that on his first day in the RHU, defendant Wertz denied him a food tray. (Doc. 1, at p. 5, ¶¶ 5-7).  The following day, defendants Eberling and Kissel purportedly denied him his breakfast and lunch tray. (Id. at ¶¶ 11-12).  He alleges that defendant Taylor visited his cell a few days later—on September 7, 2011—and informed him that there was a camera placed in his cell to prevent the guards from doing anything to him. (Id. at p. 6, ¶ 19).  On September 10, 2011, defendants Eberling and Kissel allegedly denied him his breakfast tray. (Id. at ¶¶ 21-23).  He filed a grievance on September 16, 2011, complaining of deprivation of food. (Id. at p. 7, ¶ 35).  The grievance was denied by defendants Green, Bickell, and Varner. (Id. at ¶ 36).

Negron claims that the actions of defendants Wertz, Eberling and Kissel were "done maliciously and sadistically and constituted cruel and unusual punishment and violated, and continue to violate his Eighth and Fourteenth Amendment rights." (Doc. 1, p. 4, p. 10, ¶ 4.)  He also alleges that the failure of defendants Taylor, Butler, Walker, Hengst, Bickell, Green, Lovett, Varner, Ellers, Sisto, Eby and Lane to discipline those responsible or to take other action to curb the denial of food, constitutes deliberate indifference. (Id. at p. 9, ¶¶ 51, 55, 57).

## B.     Denial of Medical Care

On September 3, 2011, during his RHU processing, Negron reported to defendant Nurse Harker that his ankle was injured and that he was in pain and could not walk. (Doc. 1, at p. 4, ¶ 4).  Harker examined the ankle and documented

4

the injury with photographs. (<u>Id.</u>) On September 4, 2011, defendant Harker administered aspirin to Negron and, in response to his request to see a physician, she  explained to him that there were no doctors or physician's assistants available on the weekend and that he would have to wait to be seen. (<u>Id.</u> at p. 5, ¶ 9).  On September 5, 2011, defendant P.A. Resigno came to Negron's cell and requested that he put his foot through the food slot so it could be examined. (<u>Id.</u> at ¶ 16).  He Negron stated that he was in too much pain to lift the foot as requested; he further explained that he was in constant pain and that it was affecting his sleep. (<u>Id.</u>) Resigno informed him that she would: (1) order an x-ray and (2) prescribe Tylenol-3 for the pain. (<u>Id.</u> at ¶ 17).  An x-ray administered on September 6, 2011, revealed no fractures. (<u>Id.</u> at ¶ 18).

According to Negron, on September 10, 2011, the RHU officer ignored his complaints of pain and request for medical attention. (Doc. 1, at p. 6, ¶ 25). Defendants Lt. Dunkle and Correctional Officers Everling and Kissel also denied him medical care by purportedly ignoring his regular entreaties for sick call request forms between September 10, 2011 and September 14, 2011. (<u>Id.</u> at ¶ 26).  On September 14, 2011, defendants Butler and Walker allegedly refused to retrieve a sick call request form from him. (<u>Id.</u> at¶ 28).  Negron further alleges that he informed defendant Nurse Sheila that he was being denied medical attention because "his sick call requests were not being turned in by the officers," and, despite his plight, she refused his sick call request form. (<u>Id.</u> at ¶¶ 29, 30).  Nurse Sheila also refused Negron's September 16, 2011 request to take his sick call form,

5

citing security concerns.  (Id. at ¶ 30: at p. 7, ¶¶ 32-33).  In Negron's presence, she asked an officer if he would pick up the sick call request and the officer indicated that he would do so.  (Id. at p. 7, ¶ 34).  On that same day, defendant Lt. Fogle purportedly refused to call the medical department for the purpose of informing the medical staff that Negron was in constant pain.  (Id. at p. 6, ¶ 31).

He generally alleges that between September 16, 2011 and September 20, 2011, he "filed several sick call request and complained to defendants about his constant pain and denial of medical care, all to no avail."  (Doc. 1, at p. 7, ¶ 37).  On September 20, 2011, he informed defendant Counselor Lovett of the denial of medical care.  (Id. at ¶ 38).  Lovett indicated that he would look into the issue.  (Id. at ¶ 39).  On September 27, 2011, he summoned defendant Nurse Melanie to his cell and asked her to take a sick call request form but the officer escorting her "would not allow it."  (Id. at ¶ 40).  On September 28, 2011, defendant Butler allegedly refused to provide plaintiff with a sick call request form.  (Id. at ¶ 41).

On October 1, 2011, in response to Negron's complaints of ankle pain, defendant Nurse Harker suggested that he try stretching the ankle.  (Doc. 1, at p. 7, ¶ 43).  On October 3, 2011, defendant P.A. Resigno examined Negron.  (Id. at ¶ 46). She prescribed an anti-inflammatory drug, Naproxen, 500 mg., and informed him that she experienced the same injury and that it would likely take three to six months to heal.  (Id. at pp. 7-8, ¶¶ 47-48).  His prescribed medication was  received on October 7, 2011.  (Id. at p. 8, ¶ 50).

Negron avers that the failure of defendants Everling, Kissel, and Wertz to provide him with proper medical care constituted deliberate indifference to this serious medical needs in violation of the Eighth Amendment. (Doc. 1, at p. 9, ¶ 54). Further, the actions of defendants Lovett, Lt. Dunkle, Lt. Fogle, Harker, Nurse Sheila, Nurse Melanie, Lane and Sisto deprived him of proper medical care, in violation of his Eighth Amendment rights. (Id. at p. 9, ¶ 56). He contends that defendants Bickell, Eby, Lane, Sisto and Green were placed on notice of the denial of medical care *via* complaints and inmate requests and "failed to take disciplinary action against them or otherwise to control their behavior." (Id. at p. 8, ¶ 51-52).

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

### A.    Official Capacity

Defendants seek dismissal of the complaint against all defendants in their official capacity.  Personal-capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law.  Official-capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent.  <u>Gregory v. Chehi</u>, 843 F.2d 111, 120 (3d Cir. 1988); <u>see</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens.  <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100–01, 117 (1984); <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996); <u>Lavia v. Pennsylvania</u>, 224 F.3d 190, 195–96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 237–38 (1974).  Congress has not abrogated the immunity regarding Negron's claims, nor has Pennsylvania waived this grant of immunity.  <u>See</u> 42 Pa.C.S.A. § 8521(b).  Consequently, Negron's claims for money damages against the

8

defendants in their official capacity are barred by sovereign immunity.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

**B.    Eighth Amendment**

      1.    Denial of Food Tray

  The Eighth Amendment protects prison inmates from cruel and unusual punishment.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (1994).  A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety.  Id.

  Negron alleges that the deprivation of a food tray on September 3, 2011, a breakfast and lunch tray on September 4, 2011, and a breakfast tray on September 10, 2011, violated his Eighth Amendment rights.  In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment.  Rhodes, 452 U.S. at 362–363.

Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement.  Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).  The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose.  Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002); see also Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002) (holding a "substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment"); see also Talib v. Gilley, 138 F.3d 211, 214 (5th Cir. 1998) (stating that whether the deprivation of food falls below acceptable threshold of "minimal civilized measure of life's necessities" depends on the amount and duration of the deprivation).  In the same way that an inmate relies on prison officials to provide appropriate medical care, see Estelle v. Gamble, 429 U.S. 97 (1976), and protection from assaults by other inmates, see Farmer, 511 U.S. 825, inmates rely on prison officials to provide them with adequate sustenance on a daily basis.  Although the repeated and unjustified failure to do so amounts to a serious depravation, the purported denial of a few single meals on various days is not of such magnitude as to rise to the level of a constitutional violation.  See Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009), citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); see also Talib, 138 F.3d at 214 (concluding that "missing one out of every nine meals is hardly more than that missed by many working citizens over the same period" and therefore not "anything close" to a denial of a minimal measure of life's necessities).  Negron has failed to allege facts sufficient for the court to conclude that his Eighth Amendment conditions of

confinement claims should proceed because he has failed to allege: (1) that the deprivation alleged was objectively, sufficiently serious; and (2) that any defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by Farmer.  Consequently, the Eighth Amendment conditions of confinement claim against defendants Wertz, Eberling, Kissel, Taylor, Butler, Walker, Hengst, Bickell, Green, Lovett, Varner, Ellers and Eby will be dismissed.

2.      Denial of Medical Care

There is no doubt that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103–105 (1976).  In order to set forth a cognizable claim, plaintiff must allege a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need.  Estelle, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  The "deliberate indifference" prong requires that the defendant actually know of and disregard "an excessive risk to inmate health and safety."  Farmer, 511 U.S. at 837. Circumstantial evidence can demonstrate subjective knowledge if it shows that the excessive risk was so obvious the official must have known about it.  Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  The Third Circuit has found deliberate indifference where the prison official knew of a prisoner's need for medical treatment and intentionally refused to provide it, delayed necessary medical treatment for a non-medical reason, or prevented a prisoner from receiving needed or recommended medical treatment.  Rouse, 182 F.3d at 197.

11

Negron's allegations that defendants Everling, Kissel, and Lt. Dunkle, on several occasions over the course of a number of days, in the face of complaints of constant ankle pain and discomfort, denied or delayed access to medical treatment by failing to provide him with sick call request forms or retrieve completed sick call request forms from him, are sufficient to state an Eighth Amendment claim.  Id. (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993); Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346–47).

Conversely, the isolated incidents involving defendants Lt. Fogle, Butler, Nurse Sheila and Nurse Melanie, and the complete lack of any allegations against defendants Wertz and Ellers are insufficient to state an Eighth Amendment inadequate medical care claim.  Likewise, the allegations against defendant Nurse Harker are insufficient to state a claim.  Claims of medical malpractice and disagreements as to the proper course of medical treatment will not satisfy the deliberate indifference standard.  Monmouth Cnty. Corr. Institutional Inmates, 834 F.2d at 346.  Courts will not second guess whether a particular course of treatment is adequate or proper.  Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997).  The facts set forth in the complaint reveal that on September 3, 2011, Harker examined Negron's ankle and documented the injury with photographs.  The following day, she provided him with aspirin and, in response to his request to see a physician, she explained to him that because there were no doctors or physician's assistants available on the weekend, he would have to wait to be seen.  The only other encounter Negron had with Harker was on October 1, 2011, at which time Harker

12

suggested that he try stretching the ankle to alleviate pain.  It is clear from the

allegations that Nurse Harker attended to Negron's medical needs each time he

presented for care, and that Negron is simply dissatisfied with the course of

treatment provided to him.

Finally, with respect to Bickell, Eby, Sisto, Green, Lovett and Lane, Negron

seeks to impose liability on these defendants, not because they had any direct

involvement in the alleged denial of medical treatment but, rather, because he

notified them of the alleged denial of medical care—*via* complaints and inmate

request forms—and they failed to take action.  However, a state prisoner's bold

allegation that prison officials and administrators failed to respond to the prisoner's

complaint or grievance, does not establish that the officials and administrators were

involved in the underlying unconstitutional conduct.  See Rode, 845 F.2d at 1207-08

(concluding that after-the-fact review of a grievance is insufficient to demonstrate

the actual knowledge necessary to establish personal involvement); Brooks v.

Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (same); see also  Pressley v. Beard, 266 F.

App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed

prison officials named in a prisoner's § 1983 action who were sued "based on their

failure to take corrective action when grievances or investigations were referred to

them").  Hence, the claim against defendants Bickell, Eby, Sisto, Green, Lovett and

Lane, which solely arises out of their failure to satisfactorily resolve his complaints,

will be dismissed given their lack of personal involvement in the alleged denial of

Negron's Eighth Amendment rights.

13

## C.      Fourteenth Amendment

The only Fourteenth Amendment claim that can be gleaned from Negron's complaint is that his due process rights were violated in the course of prison grievance procedure.  Such a claim has no merit because prisoners do not have a constitutionally protected  right to prison grievance procedures.  Rivera v. Pa. Dep't of Corr., 346 F. App'x 749, 751 (3d Cir. 2009); see also Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (holding the alleged obstruction of grievance procedures by a prison official did not give rise to an independent § 1983 claim).  Nor do prisoners have a liberty interest in the grievance procedures which is protected by the due process clause.  See Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).  In any event, Negron was not deprived of any process.  He alleges that he availed himself of the prison grievance procedures and, although he may not agree with the outcome of his grievance, his complaints were aired in the designated forum and assessed by the appropriate officials.  The Fourteenth Amendment claim will be dismissed.

**IV.**   **Conclusion**

For the reasons set forth above, the motion (Doc.19) to dismiss filed on behalf

of defendant Lane will be granted.  The motion to dismiss (Doc. 15) filed on behalf

of the corrections defendants will be granted in part and denied in part.

An appropriate Order will issue.


                              /S/ CHRISTOPHER C. CONNER
                              Christopher C. Conner, Chief Judge
                              United States District Court
                              Middle District of Pennsylvania


Dated:      July 8, 2014