# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANAEL NEGRON,** | : | **CIVIL ACTION NO. 1:13-CV-1568** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TABB BICKELL,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

On June 11, 2013, plaintiff Nathanael Negron ("Negron"), an inmate

formerly housed at the State Correctional Institution at Huntingdon, Pennsylvania

("SCI-Huntingdon"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1).

Remaining defendants are Correctional Officers Everling, Kissell and Dunkle, and

Physician Assistant Riscigno ("PA Riscigno").[1] Before the court is a motion (Doc.

76) to dismiss pursuant to Federal Rule of Civil Procedure 12(b) by PA Riscigno.

For the reasons set forth below, the court will grant the pending motion.

---

[1] By memorandum and order dated July 8, 2014, the court dismissed all
claims against defendants Bickell, Ellers, Green, Wertz, Fogle, Taylor, Butler,
Walker, Hengst, Eby, Harker, Nurse Sheila, Nurse Melanie, Lovett, Sisto, Varner,
and Lane. (Docs. 43, 44). Negron's Eighth Amendment claim of inadequate medical
care is pending against defendants Everling, Kissell, Dunkle, and Riscigno. The
court will address the Rule 56 motion filed by defendants Everling, Kissell, and
Dunkle by separate memorandum of today's date.

## I.    <u>Allegations of the Complaint</u>[2]

Negron was involved in an altercation with another inmate in the main yard at SCI-Huntingdon on September 3, 2011.  (Doc. 1 at 3 ¶ 1).  During the incident, he "incidently [sic]" punched Officer Himes.  (Id. ¶¶ 1-2).  Other officers restrained Negron and, in the process, "seriously injured" his ankle.  (<u>Id.</u> at ¶ 3).  Negron was escorted to the RHU.  (<u>Id.</u> at 4 ¶ 4).

On September 5, 2011, PA Riscigno came to Negron's cell and requested that he put his foot through the food slot so it could be examined.  (<u>Id.</u> at 5 ¶ 16).  Negron indicated that he was in too much pain to lift his foot and explained that he was in constant pain and that it was affecting his sleep.  (<u>Id.</u>)  PA Riscigno advised Negron that she would order an x-ray and prescribe Tylenol-3 for the pain.  (<u>Id.</u> at ¶ 17).  An x-ray administered on September 6, 2011 indicated no broken bones.  (<u>Id.</u> at ¶ 18).

Negron generally alleges that between September 16, 2011 and September 20, 2011, he "filed several sick-call request[]s and complained to the Defendants about his constant pain and denial of medical care, all to no avail."  (<u>Id.</u> at 7 ¶ 37).  On October 3, 2011, Negron was again examined by PA Riscigno.  (<u>Id.</u> at ¶ 46).  According to Negron, PA Riscigno "could not believe" he had not been prescribed pain medication.  (<u>Id.</u>)  PA Riscigno prescribed an anti-inflammatory medication, Naproxen, and informed Negron that she previously experienced the same injury and that it took three to six months to heal.  (<u>Id.</u> at 7-8 ¶¶ 47-48).  Negron received his prescribed medication on October 7, 2011.  (<u>Id.</u> at 8 ¶ 50).

---

[2] The court includes only those allegations relevant to Negron's claim against Riscigno.

## II.  **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III.  Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse, 182 F.3d at 197). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

5

Assuming *arguendo* that Negron's ankle injury represents a serious medical need, the court must determine whether Negron has pled deliberate indifference to that need. He has not. To the contrary, Negron's allegations against PA Riscigno demonstrate that she provided adequate medical attention. (See Doc. 1 at 5, 7-8 ¶¶ 16-18, 46-48). Negron specifically alleges that PA Riscigno examined him on September 5, 2011, at which time she prescribed Tylenol-3 and scheduled an x-ray. (Id. at 5 ¶¶ 16-17). Negron underwent an x-ray the following day, and PA Riscigno informed him that he had no broken bones in his ankle. (Id. at ¶ 18). PA Riscigno also treated Negron on October 3, 2011, prescribed Naproxen 500 mg, and informed Negron that he may continue to experience pain for three to six months. (Id. at 7-8 ¶¶ 46-48). Negron avers that on this occasion, "Ms. Riscigno decided to properly examine [his] ankle." (Doc. 79 at 1). There are no further allegations against PA Riscigno.

Negron's pleading establishes that he was promptly treated for his ankle injury following the altercation. There are no allegations that PA Riscigno wholly refused to provide any medical care. (See Doc. 1 at 5, 7-8 ¶¶ 16-18, 46-48). Indeed, Negron admits that he did receive medical treatment from PA Riscigno: according to Negron, PA Riscigno examined his ankle, ordered and reviewed an x-ray, and twice prescribed him pain medication. (Doc. 79 at 1-2).

Negron appears to take issue only with the nature and timing of the care he received: in his Rule 12 opposition brief, he avers that he did not receive "proper" or prompt enough treatment. (Id. at 2). *In essentia*, Negron expresses that he is dissatisfied with the medical care he received. The Third Circuit has repeatedly

held, however, that prisoners are not entitled to convert such dissatisfaction into a constitutional claim.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth Cty., 834 F.2d at 346); see also Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.").  Further, Negron's personal belief that he required more examinations by PA Riscigno during a twenty-eight day period amounts to nothing more than a difference of opinion as to course of treatment, which likewise does not amount to a constitutionally cognizable delay or denial of treatment.  See Small v. Visinsky, 386 F. App'x 297 (3d Cir. 2010) (holding that a fifteen day delay in providing prescribed physical therapy to an inmate does not amount to deliberate indifference).  Thus, the complaint fails to state an Eighth Amendment deliberate indifference claim against PA Riscigno.

When a plaintiff fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing his complaint.  See Grayson, 293 F.3d at 108; Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  To this end, the Third Circuit Court of Appeals has held that that when a civil rights complaint is subject to dismissal under Rule 12(b)(6), courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Although Negron's claim against PA Riscigno is deeply flawed, we cannot conclude that his pleading is incurable.  Hence, the court will afford Negron the opportunity to amend his complaint.

## IV.    <u>Conclusion</u>

For the reasons set forth above, the court will grant PA Riscigno's motion

(Doc. 76) to dismiss.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      April 13, 2017