# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANAEL NEGRON,** | : | CIVIL ACTION NO. 1:13-CV-1568 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **TABB BICKELL,** *et al.*, | : | |
| Defendants | : | |

# **MEMORANDUM**

On June 11, 2013, plaintiff Nathanael Negron ("Negron"), an inmate formerly housed at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining defendants are Correctional Officers Everling, Kissell and Dunkle (collectively, "defendants").[1] Before the court is the defendants' motion (Doc. 99) for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court will grant the motion.

---

[1] By memorandum and order dated July 8, 2014, the court dismissed all claims against defendants Bickell, Ellers, Green, Wertz, Fogle, Taylor, Butler, Walker, Hengst, Eby, Harker, Nurse Sheila, Nurse Melanie, Lovett, Sisto, Varner, and Lane. (Docs. 43, 44). By memorandum and order of today's date, the court granted defendant Riscigno's motion (Doc. 76) to dismiss Negron's claim against her.

I.  **Legal Standard**

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

II. **Statement of Material Facts**[2]

On June 11, 2013, Negron initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The only remaining claims are Eighth Amendment medical deliberate indifference claims against defendants Everling, Kissell, and Dunkle.

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 101, 106). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

On September 3, 2011, Negron injured his left ankle after engaging in a fight with another inmate and attempting to hit a correctional officer. (Doc. 101 ¶ 29; Doc. 106 ¶ 29). After the fight, Negron was transferred to the RHU. (Doc. 101 ¶ 30; Doc. 106 ¶ 30). On September 3, 2011, Nurse Harker, the on-duty nurse, examined Negron's ankle. (Doc. 101 ¶ 31; see Doc. 106 ¶ 31). Nurse Harker gave Negron an ace bandage to wrap his ankle and advised him to keep it elevated. (Doc. 101 ¶ 31; Doc. 106 ¶ 31). Negron rejoins that "looking at the injury and taking notes" does not amount to treatment. (Doc. 106 ¶ 31).

The parties dispute whether Negron treated with Physician Assistant Riscigno ("PA Riscigno") in the urgent care unit of SCI-Huntingdon on September 4, 2011. (See Doc. 101 ¶ 32; Doc. 106 ¶ 32). They agree that Nurse Harker examined Negron's ankle on September 4, 2011, that she noted bruising and swelling, and that she told Negron to keep his ankle elevated. (Doc. 101 ¶ 33; Doc. 106 ¶ 33). Negron disputes whether such examination constitutes "treatment." (Doc. 106 ¶ 33). Also on September 4, 2011, Dr. Luis Areneda wrote Negron a prescription for Motrin for seven days. (Doc. 101 ¶ 34). Negron does not recall receiving Motrin. (Doc. 106 ¶ 34).

On September 5, 2011, PA Riscigno treated Negron and recommended that he undergo an x-ray of his left ankle. (Doc. 101 ¶ 35; Doc. 106 ¶ 35). Negron was given a three-day prescription for Tylenol-3 that same day. (Doc. 101 ¶ 36; Doc. 106 ¶ 36). Negron avers that he was never given an ice pack for his ankle, and he was forced to hop on one foot to place his foot through the food slot of his cell for PA Riscigno to examine him. (Doc. 106 ¶ 36). Negron underwent an x-ray one day

3

later, on September 6, 2011. (Doc. 101 ¶ 38; Doc. 106 ¶ 38). The x-ray revealed that his left ankle was not broken. (Doc. 101 ¶ 38; Doc. 106 ¶ 38).

Defendants contend that Negron was offered medical attention on September 14, 2011, but he refused any medical care. (Doc. 101 ¶ 39; Doc. 103-9). Negron remonstrates that the Medical Release Form refusing care "may have been 'doctored' and/or altered." (Doc. 106 ¶ 39). PA Riscigno examined Negron again on October 3, 2011, (Doc. 101 ¶ 40; Doc. 106 ¶ 40), at which time she prescribed an anti-inflammatory drug, Naproxen. (Doc. 106 ¶ 40; see also Doc. 1 at 7-8 ¶¶ 47-48).

During the relevant time frame, Negron had access to guards every half hour, as well as nurses and other medical personnel throughout the day. (Doc. 101 ¶ 41; Doc. 106 ¶ 41). He contends that their presence "was of little consequence." (Doc. 106 ¶ 41). Negron testified that he harbored no "ill will" toward Everling, Kissell or Dunkle, and he did not perceive any "ill will" from them. (Doc. 101 ¶ 44; Doc. 106 ¶ 44).

From September 2011 to October 2011, Negron successfully submitted other documents, including grievance documents and letters to his family, in the same manner he would have submitted medical request forms. (Doc. 101 ¶ 45; Doc. 106 ¶ 45). Negron had access to medical slips, and completed two slips seeking medical care. (Doc. 101 ¶ 42; see Doc. 106 ¶ 42). Negron states that he received the medical slips from other inmates. (Doc. 106 ¶ 42). Negron does not know which correctional officers collected his sick call request forms for processing. (Doc. 101 ¶ 43; Doc. 106 ¶ 43).

4

The Department of Corrections ("DOC") has an Inmate Grievance System through which inmates can seek formal review of issues relating to any aspect of their confinement. (Doc. 101 ¶¶ 7-16; Doc. 106 ¶¶ 7-16). Kerri Moore is employed as the Assistant Chief of the Secretary's Office of Inmate Grievances and Appeals, and her responsibilities include reviewing and tracking all grievances filed and taken to final review. (Doc. 101 ¶ 17).

According to Moore's review of the DOC's Inmate Grievance Tracking System, Negron submitted only one grievance relating to the medical care for his injured ankle, grievance number 384097. (Id. ¶ 20). On October 2, 2011, Negron filed grievance number 384097 alleging that several individuals at SCI-Huntingdon ignored his requests for medical attention for his injured ankle. (Doc. 101 ¶ 21; Doc. 106 ¶ 21). The initial grievance was denied. (Doc. 101 ¶ 23). Negron appealed the grievance to final review, where the institution's findings were upheld. (Id. ¶ 24). Grievance number 384097 does not identify defendants Everling or Kissell. (Id. ¶ 25). According to Negron, his reference in the grievance to "C.O.'s and Guards" includes Everling and Kissell. (Doc. 106 ¶ 25). The grievance mentions defendant Dunkle, but does not attribute any specific behavior to him. (Doc. 101 ¶ 26). Negron states that Dunkle is responsible for the correctional officers and guards, and his "inaction and failure to act show that he supported their behavior and at a minimum, allowed it to continue." (Doc. 106 ¶ 26).

### III. Discussion

#### A. Exhaustion of Administrative Review

Defendants seek summary judgment on the ground that Negron failed to properly administratively exhaust his claims against Everling and Kissell. (Doc. 102 at 8-9). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. See Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. Id. at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either

6

through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (nonprecedential).

The Pennsylvania DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804; (Doc. 101 ¶¶ 7-16; Doc. 106 ¶¶ 7-16). After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

As noted *supra*, the standard used to determine when a prisoner has exhausted the administrative process is whether he complied with applicable grievance procedures and rules. The relevant policy and the pertinent language states as follows:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s).

DC-ADM 804, § 1(A)(11). Notably, "[t]he inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(11). The purpose of the regulation "is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." Spruill, 372 F.3d at 234.

Kerri Moore, an administrative officer in the Secretary's Office of Inmate Grievances and Appeals, has submitted a declaration under penalty of perjury stating that, based on review of the DOC's Inmate Grievance Tracking System, Negron submitted only one grievance relating to the medical care for his injured ankle, grievance number 384097. (Doc. 103-3 at 2-4 ¶¶ 1, 8). Accompanying Moore's declaration are copies of the relevant institutional administrative remedy records. (Doc. 103-2).

Negron filed his initial grievance on October 2, 2011. (Doc. 103-2 at 2). The text of the grievance names only defendant Dunkle, and it fails to mention defendants Everling or Kissell. (Id.) The grievance complains that Negron did not

8

receive medical treatment for his ankle. (Id.) The initial grievance was denied, and the grievance officer responded as follows:

> In your grievance you claim numerous accounts of retaliation and harassment, stemming from an incident that happened in C-yard. You claim that from 9/3/11 to 10/2/11, you could not get anyone, including the medical dept., to help you receive treatment for your ankle. You claim that all of your sick call slips are being thrown away by staff.
>
> I have investigated your grievance and have interviewed the available accused staff members; they have denied your allegations. I have also talked with the medical department, and it is documented in your medical records that you did receive treatment on 9/3 and 9/4/11 by RN Harker. Also on 9/4 and 9/5/11 you were assessed by PCA Riscigno. On 9/6/11 you had received an x-ray of your ankle, and on 10/6/11 you were again seen by PAC Riscigno. I find your grievance without merit; therefore, it is denied. If you need a sick call slip, see the RHU staff, LT., or the nurse while making there [sic] rounds.

(Doc. 103-2 at 4).

Negron filed an appeal to the Facility Manager. (Doc. 103-2 at 5). The appeal does not name Everling, Kissell, or Dunkle. (Id.) The Facility Manager remanded the appeal to the grievance officer to investigate Negron's claims that he was not receiving sick call slips. (Id.) On remand, the grievance officer found no evidence that any staff members were denying Negron sick call slips or discarding his sick call slips. (Id. at 10). Upon review of the grievance officer's additional findings, the Facility Manager ultimately upheld the grievance officer's response. (Id. at 11).

Negron then appealed to final review. (Id. at 12-13). The appeal again only mentions defendant Dunkle and does not name defendants Everling or Kissell. (Id.)

9

The Chief Grievance Officer denied the final appeal and found as follows:

> You state in your grievance that you were involved in a fight in which you injured your foot. You allege that you requested to see medical. You state that you submitted sick call slips and you allege that staff either denied you a sick call slip or threw them out. Captain Eby conducted an investigation into your allegations. The record reflects that he notified the medical department who indicated that you were seen in medical on 9/3/11, 9/4/11, 9/5/11, 9/6/11 and 10/6/11. The record reflects that RHU officers hand out sick call slips when they are making their punches. You have failed to provide any evidence to substantiate your claims that staff did not turn in your sick call slips. Any issues not included in your original grievance will not be addressed at final review.

(Id. at 16).

Negron failed to utilize the DOC's Inmate Grievance System with respect to defendants Everling and Kissell by failing to identify these individuals in the initial grievance or any subsequent appeal. Moore's declaration and DOC administrative remedy records reveal that Negron did not properly exhaust his claims against Everling and Kissell. In reaching this determination, the court notes that Negron fails to provide any evidence that he properly exhausted administrative remedies.

Negron does not dispute that he failed to identify Everling and Kissell by name. Nevertheless, Negron asserts that he named the "entire staff" and "is allowed to withhold names for [his] own protection." (Doc. 105 at 3, 9). However, Spruill clearly "requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." Hemingway v. Ellers, No. 4:CV-07-1754, 2008 WL 3540526, at *11 (M.D. Pa. Aug. 12, 2008) (citing Williams, 146 F. App'x at 557). It is a plaintiff's burden to explain why he did not name a

particular defendant in the grievance.  See Spruill, 372 F.3d at 234.  Negron fails to do so.

Moreover, a party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e).  Negron has not made any showing of a "justifiable excuse" for noncompliance with the exhaustion requirement.  See Williams, 146 F. App'x at 557.  Negron's general naming of the "entire correctional staff" is not sufficient to put the individual prison officials on notice of their purported wrongdoing.  The undisputed record establishes that Negron failed to properly exhaust available administrative remedies with respect to defendants Everling and Kissell.  As a result, defendants Everling and Kissell are entitled to summary judgment.[3]

### B. Eighth Amendment Claim

For purposes of Eighth Amendment medical claims, nonmedical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

---

[3] Consequently, the court proceeds to a merits analysis of Negron's Eighth Amendment claim against defendant Dunkle alone.  Nonetheless, the court notes that the analysis that follows would apply with equal force to the identical claims raised against defendants Everling and Kissell.

11

The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, nonmedical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, nonmedical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., id. at 236-37 (citing Durmer, 991 F.2d at 69); Garvey v. Martinez, No. 08- 2217, 2010 WL 569852, at *6-7 (M.D. Pa. Feb. 11, 2010); Hodge v. United States, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. Aug. 31, 2007). Moreover, a claim of a constitutional deprivation cannot be premised on the mere fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

With respect to nonmedical defendants like Dunkle (including Eberling and Kissell), Negron fails to establish a viable claim. Dunkle is a correctional officer, not a trained member of medical staff subject to liability for an Eighth Amendment claim. Moreover, the record reflects that Negron received treatment for his ankle from September 3, 2011, the day of the injury, to October 3, 2011. (Docs. 103-5 to -6). He was prescribed Motrin, Tylenol-3, and eventually Naproxen, underwent an x-ray, and was examined on multiple occasions. Because Negron was under the regular care of medical experts, the nonmedical defendants were justified in believing that he was in capable hands. See Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 69. Consequently, Dunkle is entitled to summary judgment on this claim.

Regarding his claim that defendants denied him access to medical request forms, or destroyed his completed forms, Negron adduces no corroborating evidence. In his deposition, Negron admits that he did not know which correctional officers were collecting his sick call request forms for processing. (Doc. 103-4 at 32). He further testifies that he filled out at least two sick call request forms during the relevant time frame. (Id. at 22-23; Doc. 103-2 at 14-15). In fact, Negron saw nurses and doctors, underwent examinations, received an x-ray, and received medications during the relevant time period. Although Negron alleges that he attempted to submit a sick call form on September 14, 2011 and was denied medical care, the undisputed evidence reflects the opposite: despite medical staff's attempts to treat Negron, he refused treatment. (Doc. 103-9). Negron has not provided any evidence

that the corrections defendants destroyed any medical request forms, and his claims asserting such action are entirely unsupported.[4]

Additionally, Negron asserts that he is suing defendant Dunkle because he "is responsible for the correctional officers and guards." (Doc. 106, ¶ 26). This claim is, in essence, an assertion of *respondeat superior* liability seeking to hold Dunkle liable based exclusively on his supervisory role. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Accordingly, defendant Dunkle is entitled to summary judgment.

## IV. Conclusion

For the reasons set forth above, the court will grant defendants' motion (Doc. 99) for summary judgment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 13, 2017

---

[4] Negron has submitted affidavits from fellow inmates stating that he asked Correctional Officer Butler for a sick call slip, who responded that no slips were available at the time. (Doc. 105 at 17-19). Correctional Officer Butler is not a party to this action, and the affidavits contain no statements that defendants Everling, Kissell, or Dunkle denied or destroyed sick call slips. Another affidavit asserts that from September 3 through September 6, 2011, Negron asked defendant Dunkle to call medical, to which Dunkle responded, "I called medical and they said they're on the way." (Id. at 22). Yet another inmate states that Negron was denied medical attention on September 3 or 4, 2011. (Id. at 20). As the record reveals, Negron in fact received medical care on these dates. As to Negron's request that the DOC change its policy regarding the processing of medical request forms, (Doc. 105 at 11-12), the court owes substantial deference to prison administrators, who bear a significant responsibility in the daily operation of the correctional facility, and the court perceives of no grounds to interfere with sound prison administration.